UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELODY M. MARTINEZ<br>    Plaintiff | :<br>:<br>: |
| v. | :  Civil Action<br>: |
| NEVIN WARNER, both in his individual and official capacity as a Lancaster County Adult Probation and Parole Officer,<br>JOSEPH SCHAUREN, III, in his individual and official capacity as a Supervisor of Nevin Warner in Lancaster County Adult Probation and Parole,<br>CHIEF JAMES T. HANSBERRY, in his individual and official capacity as Chief of Lancaster County Adult Probation and Parole,<br>DEON ROTH, in his individual and official capacity as Director of Lancaster County Adult Probation and Parole,<br>JAMIE L. DISHONG, in her individual and official capacity as a Lebanon County Adult Probation and Parole Officer,<br>RICH WORLEY, in his individual and official capacity as a Supervisor of Jamie L. Dishong in Lebanon County Adult Probation and Parole,<br>CHIEF SALLY A. BARRY, in her individual and official capacity as Chief of Lebanon County Adult Probation and Parole,<br>SGT. STEVE BORD, in his individual and official capacity as a Lebanon City Police Officer,<br>BITHIA RISSINGER, in her individual and official capacity as a Lebanon City Police Officer,<br>CHIEF WILLIAM HARVEY, in his individual and official capacity as the Lebanon City Police Department Chief of Police,<br>LANCASTER COUNTY, Pennsylvania,<br>LANCASTER COUNTY PRISON BOARD, Pennsylvania,<br>PRISON WARDEN VINCENT A. GUARINI, in his individual and official capacity as Lancaster County Prison Warden,<br>CORRECTION OFFICER DOE, Unknown Corrections Officer #1, in her individual and official capacity as a Lancaster County Correction Officer,<br>CORRECTION OFFICER DOE, Unknown Corrections Officer #2, in her individual and official capacity as a Lancaster County Correction Officer,<br>LEBANON COUNTY, Pennsylvania, and<br>LEBANON CITY, Pennsylvania | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:  JURY TRIAL DEMANDED<br>:<br>:<br>:<br>:<br>:<br>:  No.  07-3213<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
|     Defendants | |

Martinez v. Warner *et al*
CV: 07-3213

**AMENDED COMPLAINT**

I. INTRODUCTION

1. Plaintiff, Melody M. Martinez, brings this civil rights action under 42 U.S.C. § 1983, against the following Defendants in their individual and official capacity: Nevin Warner, Joseph Schauren, III, Chief James T. Hansberry, Deon Roth, Director of Lancaster County Adult Probation and Parole, Jamie L. Dishong, Rich Worley, Lebanon County Probation Supervisor, Chief Sally A. Barry, Sgt. Steve Bord, Lebanon City Officer, Bithia Rissinger, Lebanon City Officer, Chief William Harvey, Lancaster County, Lebanon County Prison Board, Warden Vincent A. Guarini, Lancaster County, Correction Officer Doe #1, Correction Officer Doe #2, Lebanon County, and Lebanon City for recklessly and wantonly violating Plaintiff's rights by arresting her and depriving her of her liberty, and strip searching her without particularized suspicion in violation of the United States Constitution's Fourth Amendment and Fourteenth Amendment.

2. Plaintiff, Melody M. Martinez, seeks compensatory damages, punitive damages, and equitable relief for the Defendants' outrageous conduct and reckless disregard that violated Plaintiff's fundamental right to maintain her liberty when there was no probable cause to arrest her.

3. Plaintiff, Melody M. Martinez, brings this action under 42 U.S.C. §1983 against Defendants by and through the United States Constitution's Fourteenth Amendment.

## II. JURISDICTION

4. This Court has jurisdiction of this civil rights action pursuant to 28 U.S.C. §§1331 and 1343.

## III. VENUE

5. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 (b)(1) & (2) because all Defendants reside in Pennsylvania and a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in the eastern district.

## IV. PARTIES

6. Plaintiff, **Melody M. Martinez,** is an adult individual who resides at 404 North 10th Street, Lebanon, PA 17046, and is a citizen of the United States.

7. Defendant, **Nevin Warner**, was a probation officer employed by Lancaster County Adult Probation and Parole at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. He is sued in his individual and official capacity.

8. Defendant, **Joseph Schauren, III**, was the supervisor of probation officer Nevin Warner in the Lancaster County Adult Probation and Parole Office at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. He is sued in his individual and official capacity.

9. Defendant, **Chief James T. Hansberry**, was the Chief of Lancaster County Adult Probation and Parole at all times relevant to this action. Defendant Hansberry is responsible for hiring, retaining, supervising and training probation officers in Lancaster County. It is believed that he also established customs and policies for the Lancaster County Adult Probation and Parole Office. He is sued in his individual and official capacity.

10.     Defendant, **Deon Roth,** was the Director of Lancaster County Adult Probation and Parole at all times relevant to this action. Defendant Roth is responsible for hiring, retaining, supervising and training probation officers in Lancaster County. It is believed that he also established customs and policies for the Lancaster County Adult Probation and Parole Office.

11.     Defendant, **Jamie L. Dishong**, was a probation officer employed by Lebanon County Adult Probation and Parole at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. She is sued in her individual and official capacity.

12.     Defendant, **Rich Worley**, was the supervisor of probation officer Jamie L. Dishong in the Lebanon County Office Adult Probation and Parole at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. He is sued in his individual and official capacity.

13.     Defendant, **Chief Sally A. Barry**, was the Chief of Lebanon County Adult Probation and Parole at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. Defendant Barry was responsible for hiring, retaining, supervising and training probation officers in Lebanon County. It is believed that she also established customs and policies for the Lebanon County Adult Probation Office. She is sued in her individual and official capacity.

14.     Defendant, **Sgt. Steve Bord, Lebanon City Officer**, was a police officer for the Lebanon City Police Department at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. He is sued in his individual and official capacity.

15.     Defendant, **Bithia Rissinger, Lebanon City Officer**, was a police officer for the Lebanon City Police Department at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. She is sued in her individual and official capacity.

16.   Defendant, **Chief William Harvey**, was the Chief of the Lebanon City Police Department at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. Defendant Harvey was responsible for hiring, retaining, supervising and training police officers in the Lebanon City Police Department. It is believed that he also established customs and policies for the Lebanon City Police Department. He is sued in his individual and official capacity.

17.   Defendant, **Lancaster County,** is a local municipality of the Commonwealth of Pennsylvania that owns, operates, manages, directs and controls the Lancaster County Adult Probation and Parole Department. Lancaster County, directly or through its Chief or Director of Lancaster County Adult Probation and Parole, sets and implements the local policies and customs that govern the Lancaster County Adult Probation and Parole Department and its probation officers.

18.   Defendant, **Lancaster County Prison Board (the "Prison Board")** is an entity organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, the County, acting through its Prison Board, was responsible for the policies, practices, customs, supervision, implementation and conduct of all matters pertaining to the Lancaster County Prison and was responsible for the appointment, training, supervision and conduct of all Prison Board personnel, including those working in the Lancaster County Prison.

19.   Defendant, **Vincent A. Guarini** was the Prison Warden at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. Defendant Guarini was responsible for hiring, retaining, supervising and training correction officers in the Lancaster County Prison. It is believed that he also established customs and policies for the Lancaster County Prison. He is sued in his individual and official capacity.

20. Defendant, **Correction Officer Doe #1**, was a correction officer for the Lancaster County Prison at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. She is sued in her individual and official capacity.

21. Defendant, **Correction Officer Doe #2**, was a correction officer for the Lancaster County Prison at all times relevant to this action, who committed the acts and omissions alleged in this Complaint. She is sued in her individual and official capacity.

22. Defendant, **Lebanon County** is a local municipality of the Commonwealth of Pennsylvania that owns, operates, manages, directs and controls the Lebanon County Adult Probation and Parole Department. Lebanon County, directly or through its Chief of Lebanon County Adult Probation and Parole, sets and implements the local policies and customs that govern the Lebanon County Adult Probation and Parole Department and its probation officers.

23. Defendant, **Lebanon City** is a local municipality of the Commonwealth of Pennsylvania that owns, operates, manages, directs and controls the Lebanon City Police Department. Lebanon County, directly or through it's Chief of the Lebanon City Police Department and other officers, sets and implements the local policies and customs that govern the Lebanon City Police Department and its police officers.

24. At all times herein mentioned all of the Defendants were acting under color of state law.

V. FACTUAL ALLEGATIONS

25. On or about August 7, 2005, Melody M. Martinez [hereinafter "Ms. Martinez"] was in her home located at 302 North 5th Street, Apt. 10, Lebanon, PA 17046.

26. On this date, Ms. Martinez was approximately five months pregnant.

27.     At approximately 3:00 a.m. on August 7, 2005, Ms. Martinez was awakened by her boyfriend, Keith A. Bantum [hereinafter "Mr. Bantum"], who shared disturbing information that their downstairs neighbor, Leah O'Neil [hereinafter "Ms. O'Neil"] told him earlier that evening.

28.     Ms. Martinez and Mr. Bantum went downstairs to speak with Ms. O'Neil.

29.     Ms. Martinez, Mr. Bantum and Ms. O'Neil spoke for about 15 minutes outside of Ms. O'Neil's apartment.

30.     Ms. O'Neil appeared and acted as though she was under the influence of alcohol, and as a result, the conversation became loud and contentious.

31.     Ms. O'Neil entered her own apartment and to Ms. Martinez' belief and understanding, Ms. O'Neil made a call to the Lebanon City Police to file a complaint against Ms. Martinez.

32.     After Ms. O'Neil left the conversation, Ms. Martinez and Mr. Bantum returned to Ms. Martinez' upstairs apartment.

33.     Approximately 15 minutes later a female Lebanon City Police Officer [hereinafter "Officer Rissinger"] and a male Lebanon City Police Officer [hereinafter "Sgt. Bord"] knocked on Ms. Martinez' door.

34.     Ms. Martinez answered the door, while Mr. Bantum remained in the living room.

35.     Mr. Bantum was in plain sight of the door and anyone who entered through the door.

36.     Officer Rissinger entered the apartment without invitation and started walking around picking up items and looking at Ms. Martinez' personal property without Ms. Martinez' invitation, permission, or consent.

37. Ms. Martinez did not voice any objection because she was under supervised probation with Lebanon County Adult Probation and Parole and she did not want to appear uncooperative to the police officer.

38. Sgt. Bord entered the apartment uninvited.

39. Ms. Martinez became nervous and upset.

40. Officer Rissinger asked "What's going on? We got a call about a disturbance."

41. Ms. Martinez became more upset and told Officer Rissinger that nothing was wrong.

42. Officer Rissinger asked what Ms. Martinez's name was and requested proof of identity.

43. Ms. Martinez searched through her belongings for identification and found her social security card in a bag located in the living room.

44. Officer Rissinger did not ask for Mr. Bantum's identity or for proof of his identity.

45. Ms. Martinez showed both officers her identification.

46. Sgt. Bord asked Mr. Bantum to come out into the hallway.

47. Ms. Martinez asked both officers if they were charging her with something.

48. Officer Rissinger told Ms. Martinez to turn around because she had a warrant for her arrest.

49. Ms. Martinez started to cry.

50. Ms. Martinez asked Officer Rissinger why she was being arrested.

51. Officer Rissinger told her she did not know why the warrant was issued, but the warrant was issued from Lancaster County.

52. Ms. Martinez informed Officer Rissinger that she was under the supervision of the Lebanon County Adult Probation and Parole Department and that she was meeting all of the conditions of her probation.

53. Officer Rissinger told her she had to arrest her anyway.

54. Before Ms. Martinez was handcuffed, she informed the officers that she was five months pregnant.

55. Ms. Martinez also informed both officers that she had problems with the pregnancy.

56. Ms. Martinez told the officers she would appreciate having the handcuffs buckled in front of her pregnant abdomen as opposed to behind her back.

57. Both officers refused to grant this request, arrested her, and buckled the handcuffs behind her back.

58. Officer Rissinger and Sgt. Bord escorted Ms. Martinez to a Lebanon City police car.

59. Mr. Bantum followed Ms. Martinez and the officers downstairs and watched as the officers put Ms. Martinez in the Lebanon City Police car.

60. The officers took Ms. Martinez to the Lebanon City Police Department where she waited for five to six hours.

61. Upon arrival at the Lebanon City Police Department, Ms. Martinez again informed Officer Rissinger and Sgt. Bord that her pregnancy had complications, which included bleeding and cramping.

62. Ms. Martinez requested water and a blanket more than once.

63. The Lebanon City Police Department staff refused to grant this request.

64. Later that day, Ms. Martinez was transported to Lebanon County Prison.

65. Ms. Martinez spent the next night in the Lebanon County Prison.

66. Ms. Martinez again requested a blanket and water from prison staff.

67. The request for water and a blanket was repeatedly denied.

68. On August 8, 2005, Ms. Martinez was transported to the Lancaster County Prison.

69. Upon arrival at the Lancaster County Prison, Ms. Martinez was strip searched.

70. Upon arrival, Ms. Martinez again requested and received medical attention for her cramping and spotting related to her pregnancy.

71. The Lancaster County Prison medical staff told her she was dehydrated and directed her to drink water.

72. Ms. Martinez requested water from Lancaster County Prison staff.

73. The Lancaster County Prison staff refused Ms. Martinez' requests for water.

74. On Monday, August 8, 2005, Mr. Bantum called Jamie Dishong [hereinafter "Officer Dishong"], the Lebanon County Probation Officer supervising Ms. Martinez' probation, and informed Officer Dishong that Ms. Martinez was incarcerated.

75. Mr. Bantum asked Officer Dishong if she knew why Ms. Martinez was arrested.

76. Officer Dishong replied that she did not know anything about the arrest or the incarceration.

77. Mr. Bantum asked to speak with Ms. Dishong's supervisor, Probation Officer Rich Worley.

78. Mr. Bantum spoke with Supervisor Worley, who informed Mr. Bantum that Ms. Martinez was arrested for failing to report to her Lancaster County Adult Probation and Parole officer.

79. Mr. Bantum informed Ms. Dishong's supervisor that Ms. Martinez had reported her change of address to Officer Dishong and that she should not have been arrested.

80. Ms. Martinez remained incarcerated in Lancaster County Prison for another four days.

81. On Friday, August 12, 2005, five days after Ms. Martinez' arrest, Ms. Martinez was released from Lancaster County Prison.

82. Lancaster County Prison Officials informed Ms. Martinez that she should report to Nevin Warner, a Lancaster County Adult Probation and Parole Officer, within 72 hours.

83. On Monday, August 15, 2005, Ms. Martinez met with Lancaster County Adult Probation and Parole Officer Nevin Warner [hereinafter "Officer Warner"] for less than five minutes.

84. Ms. Martinez asked Officer Warner why she had been arrested.

85. Officer Warner directed Ms. Martinez to ask Probation Officer Dishong at the Lebanon County Adult Probation and Parole Office about what had occurred.

86. Officer Dishong called Ms. Martinez on Tuesday, August 16, 2005.

87. On August 16, 2005, Officer Dishong informed Ms. Martinez that she was downstairs and she wanted Ms. Martinez to come down and speak with her.

88. Ms. Martinez went downstairs and saw Officer Dishong in her car in front of the apartment building.

89. Officer Dishong directed Ms. Martinez to enter her car and sit down.

90. Officer Dishong told Ms. Martinez, "I'm sorry. I made a mistake."

91. Officer Dishong also told Ms. Martinez, "My supervisor and his boss are upset with me for what happened to you."

92. Officer Dishong told Ms. Martinez that she could file a lawsuit to seek justice for what had happened.

93. Ms. Martinez declined to respond to these disclosures and asked for the time and date of her next supervisory meeting.

94. Ms. Martinez suffers from chronic depression and other mental health illnesses.

95. Officer Dishong was aware of Ms. Martinez' medical background and knew about Ms. Martinez' mental health condition and her pregnancy and acted in disregard of these factors.

96. In the alternative, Officer Dishong was aware of Ms. Martinez' medical background and knew or should have known about Ms. Martinez' mental health condition and her pregnancy.

97. Due to her unlawful incarceration, Ms. Martinez lost her job at the Golden Coral restaurant.

98. Ms. Martinez suffered great economic hardship as a result losing her job at the Golden Coral.

99. Ms. Martinez was not able to regain employment at the Golden Coral because her position had been filled by the time she reported back to work.

100. During the month of August 2005, Ms. Martinez was subject to a child support order.

101. As a result of losing her job, Ms. Martinez faced possible contempt charges for failing to pay child support.

102. Ms. Martinez asked Officer Dishong to inform the Domestic Relations Office that Ms. Martinez lost her job through no fault of her own.

103. Officer Dishong agreed to write a letter explaining that "[d]ue to the Probation Department mistake, Ms. Martinez lost her job while incarcerated." [A copy of the letter is attached and incorporated herein as Exhibit A.]

104. Ms. Martinez completed her probation in July 2006.

105. Because of the unlawful arrest and incarceration, Ms. Martinez has suffered emotional distress.

106. Because of the unlawful arrest and incarceration, Ms. Martinez' mental health condition has deteriorated to the extent she required hospitalization.

## VI. CONSTITUTIONAL VIOLATIONS

107. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

108. A Fourth Amendment violation occurs when there is an arrest without probable cause. An erroneously issued warrant cannot provide probable cause for an arrest. *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed 2d 306 (1971).

109. The United States Constitution requires state actors to take certain precautions before issuing and executing an arrest warrant. *Berg v. County of Allegheny*, 216 F.3d 261, 2000 U.S. App. LEXIS 16681 (3d Cir. 2000).

110. The Defendants failed to take the necessary precautions in issuing and executing an arrest warrant for Ms. Martinez, and as a result, arrested her without probable cause in violation of the Fourth Amendment.

111. A Fourth Amendment violation occurs when there is an unlawful body search without any particularized suspicion that an individual has either contraband or weapons.

112. Defendants, Correction Officer Doe #1 and Correction Officer Doe #2, without individualized suspicion of either contraband or weapons automatically strip searched Ms. Martinez upon her arrival at the Lancaster County Prison.

113. The Fourteenth Amendment provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

114. A Fourteenth Amendment violation occurs when a municipality engages in a custom or practice that is likely to deprive a person of liberty without due process of law. *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

115. Where a municipality engages in a custom and practice that is deliberately indifferent to the need for training and supervision, a violation of the Fourteenth Amendment results. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed.2d 611 (1978).

116. It is believed and therefore averred that Lancaster County and Lebanon County had a practice and policy that allowed probationers to be falsely arrested in violation of probationers' civil rights.

117. It is believed and therefore averred that that this practice and policy involved a failure of inter-county communication regarding supervision of probationers who move from one county to another.

118. It is believed and therefore averred that the Lebanon City Police Department engaged in a practice and policy that failed to adequately protect the constitutional rights of persons subject to arrest warrants that were not based on probable cause.

119. As a result of this practice and policy, Ms. Martinez was arrested without probable cause and deprived of her liberty for five days.

120. It is believed and therefore averred that Lancaster County and the Prison Board had a practice and policy that automatically, and without individualized suspicion, provided for the strip search of all prisoners upon their arrival in violation of the prisoners' civil rights.

121. It is believed and therefore averred that the Lancaster Prison Board engaged in a practice and policy that failed to adequately protect the constitutional rights of persons subject to arrest warrants that were not based on probable cause.

122. It is believed and therefore averred that Lancaster County Prison Warden Guarini engaged in a practice and policy that failed to adequately protect the constitutional rights of persons subject to arrest warrants that were not based on probable cause.

123. As a result of this practice and policy, Ms. Martinez was arrested without probable cause and deprived of her liberty for five days.

## VII. CAUSES OF ACTION

COUNT I:  FEDERAL CAUSES OF ACTION (42 U.S.C. § 1983 for violating the Fourth and Fourteenth Amendments)

124. Plaintiff incorporates by reference paragraphs 1 through 123 as if fully set forth herein.

125. Defendants are state actors who acted under color of state law in a manner that deprived Plaintiff of her Constitutional rights to be free from arrest without probable cause and due process of law as guaranteed by the Fourth and Fourteenth Amendments.

126. Lancaster County and Lebanon County, by and through their respective Offices of Adult Probation and Parole, had a custom or policy, as described above, demonstrating a deliberate indifference on the part of each County and this indifference was a moving force and causation behind the violations of Plaintiff's constitutional rights.

127. Upon information and belief, the Defendants Lancaster County, Lancaster County Prison Board and Warden Guarini, had a custom or policy, as described above, demonstrating a deliberate indifference on the part of each County and this indifference was a moving force and causation behind the violations of Plaintiff's constitutional rights.

128. Lebanon City, by and through the Lebanon City Police Department, had a custom or policy, as described above, demonstrating a deliberate indifference on the part of Lebanon City and this indifference was a moving force and causation behind the violations of Plaintiff's constitutional rights.

129. The actions of the Defendants violated the clearly established federal constitutional rights of the Plaintiff.

130. As a proximate result of the Defendants' actions, Plaintiff has suffered the following injuries and damages:

    a. Violation of her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution;

    b. Emotional distress, humiliation, and pain and suffering, that occurred as a result of her arrest and subsequent incarceration;

      c.    The loss of employment as a result of the unconstitutional arrest and incarceration;

      d.    Significant damage to her mental health and exacerbation of her prior diagnosis of chronic depression to a much more serious mental health diagnosis; and

      e.    Costs, fees and expenses arising out of Defendants' actions.

COUNT II:    SECOND CAUSE OF ACTION (Supplemental State Law Claims)

131.    Plaintiff incorporates by reference paragraphs 1 through 130 as if fully set forth herein.

132.    The acts and conduct of Defendants Warner, Dishong, Bord, Rissinger, Correction Officer Doe #1, and Correction Officer Doe #2 alleged above constitute assault and battery, false imprisonment, and intentional infliction of emotional distress under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

133.    As a proximate result of the Defendants' actions, Plaintiff has suffered the following injuries and damages:

    a) Emotional distress, humiliation, and suffering that occurred as a result of her arrest, strip search and subsequent incarceration;

    b) The loss of employment that resulted as a result of the unconstitutional arrest and incarceration;

    c) Significant damage to her mental health and exacerbation of her prior diagnosis of chronic depression to a much more serious mental health diagnosis; and

    d) Costs, fees and expenses arising out of Defendants' actions.

## VII. RELIEF AND DEMAND

134.	Declare that Defendants' actions violated Plaintiff's constitutional rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution;

135.	Order the Defendants to change their customs and policies so that similar constitutional violations do not occur again.

136.	Order the Defendants to train and supervise their staff so that similar constitutional violations do not occur again.

137.	Grant Plaintiff compensatory damages for violation of her Constitutional rights and for the injuries she suffered;

138.	Award Plaintiff punitive damages against Defendants in such amounts as the jury determines because Defendants' liability is based upon reprehensible actions and / or inaction;

139.	Award Plaintiff prejudgment interest, reasonable attorney fees and costs as permitted by law; and

140.	Award such other and further relief as this Court may deem appropriate.

Respectfully submitted,

DEEM, FARNEY & LÓPEZ LAW OFFICES

By:
Date:  **S/Sharon R. López**
Sharon R. López
Attorneys for Plaintiff
590 Centerville Road, #285
Lancaster, PA  17601
(717) 892-3900
Sup. Ct. Atty. ID. #70605

# ATTACHMENT A

Martinez v. Warner *et al*
CV: 07-3213



## LEBANON COUNTY PROBATION DEPARTMENT
52nd Judicial District – Lebanon County
508 Oak Street
Lebanon, PA 17042-6794
Tel. (717) 273-1557
Fax (717) 273-9378

SALLY A. BARRY
*Chief Adult Probation Officer*

WILLIAM R. SULLIVAN
*Chief Juvenile Probation Officer*

August 22, 2005

To Whom It May Concern:

    Ms. Melody Martinez was placed in Lebanon County Prison by mistake due to a misunderstanding between Lancaster County Probation and Lebanon county Probation. Ms. Martines did not violate her probation nor did she receive new charges. Due to the Probation Department mistake, Ms. Martinez lost her job while incarcerated. The job she was employed at before incarceration will not hire her back, therefore, she is looking for new employment as of this date. Ms. Martinez is concerned about paying her child support because she now fell behind on her payments and is not employed. Ms. Martinez asked this officer to write a letter to inform Domestic Relations as to what has happened in the last two weeks.
    Thank you for your time and if there are any questions, please feel free to contact this officer at (717) 273-1557 x112.

Sincerely,

*Jamie L. Dishong*
JAMIE L. DISHONG
ADULT PROBATION OFFICER

2004 - 0 -0344

JLD:mw