**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELODY M. MARTINEZ, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NEVIN WARNER, ET AL., | : | |
| Defendants | : | NO. 07-3213 |

### MEMORANDUM AND ORDER

PRATTER, J.                                                                JUNE 5, 2008

Plaintiff Melody M. Martinez sued Lancaster County and various Lancaster County

employees (collectively, "Lancaster County Defendants"),[1] Lebanon County and various

Lebanon County employees (collectively, "Lebanon County Defendants"),[2] and the City of

Lebanon and various City of Lebanon police officers (collectively, "Lebanon City Defendants")[3]

pursuant to 42 U.S.C. § 1983 and state law for damages arising out of Ms. Martinez's allegedly

unlawful arrest, strip search and incarceration.  Specifically, Ms. Martinez asserts violations of

the Fourth and Fourteenth Amendments of the United States Constitution, as well as state

common law claims for assault, battery, false imprisonment and intentional infliction of

---

[1] The Lancaster County Defendants are Lancaster County, the Lancaster County Prison Board, Lancaster County Probation Officer Nevin Warner, Lancaster County Probation Supervisor Joseph Schauren III, Lancaster County Probation Chief James T. Hansberry, Lancaster County Probation Director Deon Roth, and Lancaster County Prison Warden Vincent A. Guarini.  In addition, Ms. Martinez also sued two "Jane Doe" Lancaster County corrections officers.

[2] The Lebanon County Defendants are Lebanon County Probation Officer Jamie L. Dishong, Lebanon County Probation Supervisor Rich Worley, Lebanon County Probation Chief Sally A. Barry and Lebanon County.

[3] The Lebanon City Defendants are City of Lebanon Police Sergeant Steven Bord, City of Lebanon Police Officer Bithia Rissinger, City of Lebanon Police Chief William Harvey, and the City of Lebanon.

emotional distress.[4]  Ms. Martinez sued all of the natural person defendants in both their individual and official capacities.

The Lancaster County Defendants and the Lebanon City Defendants each moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[5]  Ms. Martinez opposes both motions.  For the reasons discussed more fully below, both motions will be granted in part and denied in part.

The Motion of the Lebanon City Defendants will be denied with respect to all claims asserted against Sergeant Bord and Officer Rissinger with the exception of the intentional infliction of emotional distress claim; that claim will be dismissed with leave to amend.  The Motion will be granted with respect to all claims asserted against Chief Harvey in his individual capacity; those claims will also be dismissed with leave to amend.  Finally, the Motion will be denied with respect to all claims against the City of Lebanon.

The Motion of the Lancaster County Defendants will be denied with respect to all claims except those claims asserted against Chief Hansberry, Officer Schauren and Officer Warner in their individual capacities; those claims will be dismissed with leave to amend.

In addition, the parties have stipulated to the dismissal of all claims asserted against Lebanon City Defendants Harvey, Bord and Rissinger in their *official capacities only* (Docket No. 27); Lancaster County Defendants Warner, Schauren, Hansberry and Guarini in their *official capacities only* (Docket No. 28); and Lancaster County Defendants Roth, Doe #1 and Doe #2 in

---

[4] Ms. Martinez filed an Amended Complaint on November 9, 2007.

[5] The Lebanon County Defendants did not move to dismiss the Amended Complaint; they filed an answer on January 10, 2008.

both their *official and individual capacities* (Docket No. 28).  The motions are moot as to these

claims, which will be dismissed.

**FACTUAL BACKGROUND**

      For the purposes of a motion to dismiss, the facts alleged in the complaint are deemed to

be true.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  Here, the facts alleged in the Amended

Complaint are as follows.

      Early in the morning on August 7, 2005, Ms. Martinez and her boyfriend, Keith A.

Bantum, had a conversation with her neighbor, Leah O'Neil.  (Amd. Compl. ¶¶ 25-29.)  At the

time, Ms. Martinez was approximately five months pregnant.  (<u>Id.</u> at ¶ 26.)  The conversation

took place around 3:00 a.m., and Ms. O'Neil, who seemed to be under the influence of alcohol,

became loud and contentious.  (<u>Id.</u> at ¶¶ 27-30.)  Ms. O'Neil eventually returned to her apartment

and called the Lebanon City Police to file a complaint against Ms. Martinez.  (<u>Id.</u> at ¶ 31.)  After

Ms. O'Neil entered her apartment, Ms. Martinez and Mr. Bantum returned to their own

apartment.  (<u>Id.</u> at ¶ 32.)

      Approximately 15 minutes later, Lebanon City Police Officer Bithia Rissinger and

Sergeant Steven Bord arrived at Ms. Martinez's apartment and began questioning Ms. Martinez

about the "disturbance."  (<u>Id.</u> at ¶¶ 33-40.)  Ms. Martinez responded that nothing was wrong.  (<u>Id.</u>

at ¶ 41.)  After Ms. Martinez showed the officers proof of identification, Officer Rissinger

arrested her without explanation.  (<u>Id.</u> at ¶¶ 45-51.)  At the time of these events, Ms. Martinez

was under the supervision of the Lebanon County Adult Probation Department and was meeting

all the conditions of her probation.  (<u>Id.</u> at ¶ 52.)

      The officers took Ms. Martinez to the Lebanon City Police Department, where she waited

for five or six hours.  (Id. at ¶ 60.)  She was then transported to Lebanon County Prison where she spent the night.  (Id. at ¶¶ 64-65.)  The following day, on Monday, August 8, 2005, Ms. Martinez was transported to Lancaster County Prison, where she was strip searched upon her arrival.  (Id. at ¶¶ 68-69.)  Ms. Martinez remained incarcerated at Lancaster County Prison until Friday, August 12, 2005, five days after her initial arrest, at which time she was released.  (Id. at ¶ 81.)  Throughout her incarceration at the various facilities, Ms. Martinez's requests for water and a blanket were repeatedly denied, even though Ms. Martinez informed the arresting officers and prison officials that she was five months pregnant and experiencing complications with her pregnancy.  (See id. at ¶¶ 55-57, 61-63, 66-67, 72-73.)

Meanwhile, on Monday, August 8, 2005, Mr. Bantum contacted Ms. Martinez's Lebanon County probation officer, Jamie Dishong, and informed Officer Dishong that Ms. Martinez had been arrested and incarcerated.  (Id. at ¶ 74.)  Officer Dishong told Mr. Bantum that she did not know anything about the arrest or incarceration.  (Id. at ¶ 76.)  Mr. Bantum then spoke to Officer Dishong's supervisor, Probation Officer Rich Worley, who informed Mr. Bantum that Ms. Martinez was arrested for failing to report to her *Lancaster County* Probation officer.  (Id. at ¶ 78.)  Mr. Bantum told Officer Worley that Ms. Martinez properly had reported her change of address to Officer Dishong and that she should *not* have been arrested.  (Id. at ¶ 79.)  Nevertheless, Ms. Martinez remained incarcerated for five days.

Upon her release, Lancaster County Prison officials informed Ms. Martinez that within 72 hours she must report to Nevin Warner, a Lancaster County Probation Officer.  (Id. at ¶ 82.)  Ms. Martinez met with Officer Warner on Monday, August 15, 2005 and asked him why she had been arrested.  (Id. at ¶¶ 83-84.)  Officer Warner directed Ms. Martinez to ask Officer Dishong

4

what had happened.  (Id. at ¶ 85.)

Officer Dishong contacted Ms. Martinez on Tuesday, August 16, 2005, and met with Ms. Martinez outside her apartment.  (Id. at ¶¶ 86-87.)  Officer Dishong told Ms. Martinez, "I'm sorry.  I made a mistake," (id. ¶ 90), and said that her "supervisor and his boss" were "upset" because of what happened to Ms. Martinez (id. at ¶ 91).[6]  It is not clear what actions or inaction by Officer Dishong (or others) led to Ms. Martinez's arrest.

Due to her incarceration and absence from work, Ms. Martinez lost her job; her position was filled before she returned to work.  (Id. at ¶¶ 97-99.)  After losing her job and thus her income, Ms. Martinez faced possible contempt charges for failing to pay child support.  (Id. at ¶¶ 100-101.)  At Ms. Martinez's request, Officer Dishong wrote a letter to inform the Domestic Relations Office that Ms. Martinez lost her job while incarcerated due to a probation department mistake.  (Id. at ¶¶ 102-103; Ex. A.)  Ms. Martinez completed her probation in July 2006.  (Id. at ¶ 104.)

Ms. Martinez suffers from chronic depression and other mental illnesses.  (Id. at ¶ 94.) Officer Dishong was aware of Ms. Martinez's medical history, her mental health condition and her pregnancy.  (Id. at ¶ 95.)  Due to the allegedly unlawful arrest and incarceration, Ms. Martinez suffered emotional distress and the deterioration of her mental health condition, which ultimately required hospitalization.  (Id. at ¶¶ 105-106.)

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley v. Gibson,

---

[6] Officer Dishong's statements are undisputed at this time.  See Answer of Dishong, Worley, Barry and Lebanon County ¶¶ 86, 87, 88, 89, 90, 104.

355 U.S. 41, 45-46 (1957).  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (quoting Conley, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65 (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

In making such a determination, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true."  ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); see also Bell Atlantic, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)").  The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburg v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

6

**DISCUSSION**

**I.      Statute of Limitations –** *Lancaster County Defendants*

Here, the original Complaint named the Lebanon County Defendants, the Lebanon City Defendants, Nevin Warner, James Turnbull and Lancaster County, and focuses on the alleged mistakenly issued and executed arrest warrant.  The Amended Complaint names the following additional Lancaster County defendants: Officer Schauren, Chief Hansberry, Director Roth, the Lancaster County Prison Board, Warden Vincent Guarini and Corrections Officers Doe #1 and #2.[7]  The Amended Complaint also added the Fourth Amendment claim based on the strip search conducted at Lancaster County Prison.[8]

Federal civil rights actions are governed by the statutes of limitations of the state in which the federal court sits.  Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000).  Section 1983 claims are subject to the state statutes of limitations governing personal injury actions.  Garvin v. City of Philadelphia, 354 F.3d 215, 219 (3d Cir. 2003).  The applicable Pennsylvania statute of limitations is two years.  42 Pa. C.S.A. § 5524(7).  Ms. Martinez's state law claims for false arrest, false imprisonment, assault, battery and intentional infliction of emotional distress are also governed by a two-year limitations period.  42 Pa. C.S.A. § 5524(1), (7).  The limitations period

_____

[7] Ms. Martinez filed an affidavit of service reporting personal service upon Joseph Schauren, James Hansberry, Nevin Warner, Vincent Guarini and Lancaster County.  Director Roth, who was never served, has been dismissed by stipulation.  (Docket No. 28.)

[8] Presumably, the Fourth Amendment seizure claims based on the arrest are asserted against the Lancaster County Probation defendants (Officer Warner, Officer Schauren, Chief Hansberry, Director Roth, and Lancaster County), while the Fourth Amendment search claims based on the strip search are asserted against the Lancaster County Prison defendants (Corrections Officers Doe #1 and #2, Warden Guarini and the Lancaster County Prison Board).  Although the Amended Complaint suffers from a lack of clarity as to which claims are intended to be against which defendants, the foregoing assumption appears correct.

7

begins to run "from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991).

Ms. Martinez was released from prison on August 12, 2005, and learned of the mistake from Officer Dishong on August 16, 2005.  Thus, the statute of limitations began to run on August 16, 2005 and expired on August 17, 2007.  The original Complaint was timely filed on August 6, 2007.  The Amended Complaint, however, was filed on November 9, 2007, approximately three months after the two-year limitations period expired.

The Lancaster County Defendants assert that all claims against Joseph Schauren, James Hansberry, Director Roth, the Lancaster County Prison Board and Warden Vincent Guarini are time-barred because these defendants were not named in the original complaint; they were added on November 9, 2007 when Ms. Martinez filed her Amended Complaint.  In addition, the strip search claim was raised for the first time in the Amended Complaint.

Ms. Martinez does not dispute that the limitations period expired prior to the filing of the Amended Complaint.  Instead, she contends that under F.R.C.P. 15, the new claims and parties "relate back" to the timely original Complaint.  Thus, the issue is whether the claims against Officer Schauren, Chief Hansberry, Warden Guarini and the Lancaster County Prison Board, and the strip search claims relate back to the filing date of the original pleading.

Rule 15(c) allows an amended pleading to relate back to the date of the original pleading under certain circumstances.  Fed. R. Civ. P. 15(c).  "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." Garvin, 354 F.3d at 220.  Rule 15(c) is intended to

"ameliorate the harsh result of the strict application of the statute of limitations."  Singletary v. Pennsylvania Dep't of Corrections, 266 F.3d 186, 193 (3d Cir. 2001).

To determine whether the substitution or addition of new defendants may relate back under Rule 15(c), the Court must determine (1) whether the claims asserted in the amendment arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; and (2) whether "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits, and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

A.      **Officer Schauren and Chief Hansberry**

Under Rule 15(c)(1)(C), the amendment adding defendants Officer Schauren and Chief Hansberry relates back to the original pleading.  First, the claims against these defendants are identical to those brought in the original Complaint and arise out of the same transaction or occurrence, namely, the issuance and execution of the arrest warrant.  Second, within 120 days of the filing of the original Complaint, these defendants received notice of the action, and knew or should have known that, but for a mistake, they would have been sued originally.

1.      **Notice and Prejudice**

The notice portion of Rule 15(c)(1)(C) has two requirements: notice and absence of prejudice.

Notice may be actual or constructive.  Singletary, 266 F.3d at 195.  Here, Ms. Martinez filed the original Complaint on August 6, 2007, making December 4, 2007 the 120-day deadline

9

for service under Rule 4.  Because Officer Schauren and Chief Hansberry were served by personal service on November 19, 2007 (Docket No. 4), they received actual notice of the lawsuit within 120 days of the filing of the original Complaint.

Prejudice is "closely intertwined" with notice in the context of Rule 15(c)(1)(C).  Id. at 194 n.3.  "[T]he amount of prejudice a defendant suffers under [15(c)(1)(C)] is a direct effect of the type of notice he received. . . . That is, once it is established that the newly named defendant received some sort of notice within the relevant time period, the issue becomes whether that notice was sufficient to allay any prejudice the defendant might have suffered by not being named in the original complaint."  Id.

Here, there is no evidence that Officer Schauren or Chief Hansberry have been or will be prejudiced by not being named in the original Complaint.  They are represented by the same counsel as Officer Warner, who was named in the original Complaint, and likely were aware of the action and involved in counsel's initial investigation.  Moreover, the three-month difference between the filing of the original Complaint and the filing of the Amended Complaint likely did not impair the Defendants' ability to prepare a defense on the merits.

## 2.      Knowledge

For an amendment joining an additional party to relate back to the original pleading, Rule 15 also requires that the newly added party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  "A 'mistake' is no less a 'mistake' when it flows from lack of knowledge as opposed to inaccurate description."  Arthur v. Maersk, 434 F.3d 196, 208 (3d Cir. 2006). Thus, in the Third Circuit, "a 'mistake' regarding a defendant's identity may encompass the

10

plaintiff's inadequate knowledge concerning the party, not merely misnomers or misidentifications."  Stewart v. Philadelphia Housing Authority, 487 F. Supp. 2d 584, 590 (E.D. Pa. 2007) (citing Arthur, 434 F.3d at 208)).

The original Complaint named James Turnbull as the Chief of Lancaster County Adult Probation and Parole and Probation Officer Nevin Warner.  The Amended Complaint named Chief Hansberry, Officer Schauren and (now dismissed) Director Roth in the place of James Turnbull.  Plaintiff's counsel avers that she did not name the additional Lancaster County probation department defendants in the original Complaint because she was unaware of, and unable to ascertain, their identities earlier.  (Docket No. 31, Pl. Declaration ¶ 9.)[9]  With the possible exception of Director Roth, all of the Lancaster County Probation defendants share the same counsel, and the original and substituted defendants are closely linked in function and position.  Thus, Chief Hansberry and Officer Schauren either knew or should have known, through their likely awareness of the suit and/or through their attorney, that they would have been named but for a mistake and/or inadequate information concerning the identity of the supervisory personnel at Lancaster County Probation Department.

Accordingly, for statute of limitations purposes, the Amended Complaint relates back to the original Complaint with respect to the claims asserted against Officer Schauren and Chief Hansberry.

## B.   Lancaster County Prison Board and Warden Guarini

The additional Lancaster County Prison defendants (the Prison Board, Warden Guarini

---

[9] During oral argument, it became clear that counsel was arguing to invoke the "mistake" rubric.  The Court permitted counsel to submit an additional filing specifically to verify the occurrence of counsel's mistake on this point.

and the Jane Doe Corrections Officers) are potentially more problematic because no Lancaster County Prison defendants (except the Lancaster County municipal entity itself) were named in the original Complaint.  Nevertheless, for the reasons discussed below, the claims asserted against these defendants also relate back to the original Complaint for statute of limitations purposes.

First, as an initial matter, the Fourth Amendment claim relating to the strip search arises out of the same transaction or occurrence as Ms. Martinez's arrest and imprisonment. "[A]mendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)."  Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004).  Thus, an amended complaint may relate back where it identifies "additional sources of damages that were caused by the same pattern of conduct identified in the original complaint." USX v. U.S. Steel Mining Company, Inc., 395 F.3d 161, 167 (3d Cir. 2004).

The strip search here would not have occurred but for the arrest.  It is part of the same core of operative facts.  Of course, the original Complaint contains factual allegations relating to the treatment Ms. Martinez received at Lancaster County Prison, even though it did not specify the manner in which she was searched.  The strip search claim expands upon those original allegations.

Second, the Prison Board and Warden Guarini had sufficient notice of the lawsuit, and knew that but for inadequate information, they would have been named as defendants.  Warden Guarini, individually and as representative of the Lancaster County Prison Board, was personally served with the Amended Complaint on November 27, 2007.  (Docket No. 5.)  Thus, the Prison

12

Board and Warden Guarini received actual notice of the lawsuit within 120 days of the filing of the original Complaint.

Likewise, these defendants were not prejudiced by not having been named in the original Complaint. All of the Lancaster County Defendants are represented by the same counsel, which decreases the risk of any prejudice. In addition, the three-month period between the filing of the original Complaint and the Amended Complaint is not so lengthy a time period as to prevent Warden Guarini or the Prison Board from presenting evidence or otherwise defending the case on the merits.

Because the original Complaint alleges events that occurred at the Lancaster County Prison, and because the Lancaster County Defendants – including those named in the original Complaint – are all represented by the same counsel, Warden Guarini and the Prison Board either knew, or should have known, that they would have been named in the original Complaint, but for some mistake or inadequate information. Plaintiff's counsel avers in her Declaration that she did not name them originally because Ms. Martinez, apparently misunderstanding what was meant by a "strip search," initially did not tell counsel she had been strip-searched, even in response to counsel's questions. (Docket No. 31, Declaration ¶¶ 6-8.) Once counsel ascertained that Ms. Martinez did in fact believe she had been unlawfully strip-searched, counsel named Warden Guarini and the Lancaster County Prison Board as defendants. (Id. at ¶¶ 10, 11.)

The detailed factual allegations in the original Complaint regarding Ms. Martinez's incarceration at Lancaster County Prison indicate that all aspects of her incarceration are the subject of the lawsuit, and, therefore, Warden Guarini and the Lancaster County Prison Board had sufficient notice that but for Ms. Martinez's mistake, i.e., her failure to understand her

counsel's questions about the prison search, they would have been sued.

Thus, the Court concludes that the Amended Complaint relates back to the filing of the original Complaint for statute of limitations purposes and, therefore, the claims against the additional Lancaster County Defendants are not time-barred.

## II.     Fourth Amendment Seizure – *The Issuance and Execution of the Arrest Warrant*

To succeed in a §1983 action, a claimant must prove that a person acting under color of state law violated the claimant's constitutional rights.  Robb v. City of Philadelphia, 733 F.2d 286, 290-91 (3d Cir. 1984).  Ms. Martinez contends that her arrest and detention by Officer Rissinger and Sergeant Bord violated the Fourth Amendment.

An arrest may violate the standards of the Fourth Amendment if it is made without probable cause to believe that a crime has been committed.  Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).  Thus, the proper inquiry in a §1983 claim based on false arrest is "'whether the arresting officers had probable cause to believe the person arrested had committed the offense.'"  Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).  If the arresting officer lacked probable cause to make the arrest, the arrestee also has a claim under §1983 for "false imprisonment based on a detention pursuant to that arrest."  Id. at 636 (citing Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir. 1988)).

"The Supreme Court has made clear that a mistakenly issued or executed warrant cannot provide probable cause for an arrest."  Berg v. County of Allegheny, 219 F.3d 261, 270 (3d Cir. 2000).  See also Whiteley v. Warden, 401 U.S. 560 (1971) (holding that an erroneously issued warrant cannot provide probable cause for an arrest).  Thus, even good faith reliance on an erroneously issued warrant cannot supply probable cause.  Berg, 219 F.3d at 271 (citations

14

omitted).  In other words, state actors must take at least certain rudimentary precautions before issuing and executing an arrest warrant.  Berg, 216 F.3d at 272.

A.      **Liability of Officer Rissinger and Sergeant Bord in Their *Individual Capacities***

At this stage of the proceedings, Ms. Martinez has adequately alleged claims against the arresting officers, Officer Rissinger and Sergeant Bord.

"Ordinarily, it is reasonable for an officer to assume that a warrant has been issued for probable cause."  Berg, 319 F.3d at 272.  Accordingly, the Third Circuit Court of Appeals has "generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant."  Id. at 273.  Nevertheless, "an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances.  Such circumstances include, but are not limited to, other information that the officer possesses or to which he has reasonable access, and whether failing to make an immediate arrest creates a public threat or danger of flight."  Id.

The Defendants rely on Baker v. McCollan, 443 U.S. 137 (1979), in which the Supreme Court held that a sheriff executing a facially valid arrest warrant is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent."  Id. at 145-46.  However, the Third Circuit Court of Appeals has declined to apply Baker to mean that reliance on a facially valid warrant *always* precludes a Fourth Amendment claim.  See Berg, 319 F.3d at 271 n.6. Instead, the Court of Appeals distinguished Baker by focusing not on "whether authorities must investigate the claims of innocence of a person who has been legitimately arrested," but rather on "what precautions the Constitution requires before an arrest warrant is issued and executed."  Id.

The latter is precisely what is at issue here.

Ms. Martinez alleges that she was arrested (Amd. Compl. ¶ 57), imprisoned for five days (id. at ¶ 81), and then released without being charged with a crime (id. at ¶¶ 78-83). Probation Officer Dishong confirmed in the August 22, 2005 letter that Ms. Martinez did *not* violate her probation and that she was arrested "by mistake due to a misunderstanding between Lancaster County Probation and Lebanon County Probation," (id. Ex. A),[10] and it is uncontested at this point that Officer Dishong orally told Ms. Martinez that her arrest was due to a "mistake" (id. at ¶¶ 90, 103).

At this early stage of the proceedings, the Court cannot conclude that Officer Rissinger and Sergeant Bord acted reasonably in relying on the mistakenly issued warrant because the reasonableness of their actions is a factual question linked to the specific facts and circumstances within their knowledge at the time of the arrest. Prior to discovery, it would be difficult for Ms. Martinez to know how or why the mistake occurred, or what information Officer Rissinger and Sergeant Bord received with respect to the warrant and Ms. Martinez. See Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004) ("The need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages."); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988) (noting that "in civil rights cases most of the evidence can be developed only through discovery of materials held by defendant officials"). Thus, with all inferences drawn in favor of the non-moving party,

---

[10] To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Officer Dishong's letter is an exhibit to the Amended Complaint.

the claims asserted against Officer Rissinger and Sergeant Bord survive the Motion to Dismiss.

**B.      Liability of Officer Warner in His *Individual Capacity***

"As a general rule, a government official's liability for causing an arrest is the same as for carrying it out."  Berg, 319 F.3d at 272.  Thus, because "§1983 anticipates that an individual will be 'responsible for the natural consequences of his actions,'" Malley v. Briggs, 475 U.S. 335, 344 n.7 (1986), liability for an unlawful arrest "can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion," Berg, 319 F.3d at 272.

Here, the Amended Complaint alleges that the warrant for Ms. Martinez's arrest was erroneously issued due to a mistake by employees of the Lebanon County Probation Department and/or the Lancaster County Probation Department.  However, there is no indication as to how Officer Warner allegedly was involved in the events that led to Ms. Martinez's arrest.  Even drawing all inferences in favor of Ms. Martinez, any claims against Officer Warner suggested by an indulgent reading of the pleading are no better than purely speculative.

In her response to the Motion to Dismiss, Ms. Martinez tries to address this apparent deficiency, but the factual allegations cited in her response to the Motion are not included in the Amended Complaint.  For example, she states that "[t]he sole reason Lebanon City Officers arrested Plaintiff Martinez was because of the Lancaster County warrant."  (Pl. Response 2.)  This alleged fact arguably is at most loosely alluded to in the Amended Complaint (Amd. Compl. ¶ 78), but is certainly not directly stated.  It depends on guesswork.  Ms. Martinez also states in her response that her Lancaster County Probation officer was Officer Warner, that he was "the likely source of the warrant," and that he "was involved in the acquisition of Plaintiff Martinez's unlawful bench warrant."  (Pl. Response 2, 12.)  In her response to the Motion, Ms. Martinez

17

asserts that "Defendant Warner knew about the unlawful arrest after that date and arranged for Plaintiff's release."  (Id. at 3.)  Although Ms. Martinez cites the Amended Complaint for these propositions, no such allegations are included in it.

In the Amended Complaint, Ms. Martinez states only that Officer Warner "committed the acts and omissions alleged in this Complaint" (Amd. Compl. ¶ 7), that the warrant was issued from Lancaster County (id. at ¶ 51), and that Mr. Bantum was told that Ms. Martinez was arrested "for failing to report to her Lancaster County Adult Probation and Parole officer" (id. at ¶ 78).  Officer Warner is never identified as that officer.  Notably, Ms. Martinez avers that upon her release she was instructed to contact *a* Lancaster County Probation officer, namely, Officer Warner, not *her* Lancaster County Probation officer.  Officer Warner's conduct is explicitly mentioned in only four paragraphs, all of which involve his contact with Ms. Martinez following her release from Lancaster County Prison.  (See Amd. Compl. ¶¶ 82-85.)

In sum, as they stand now, the allegations in the Amended Complaint do not provide sufficient information regarding any allegedly actionable involvement of Officer Warner.  Accordingly, the claims asserted against Officer Warner will be dismissed with leave to amend.

**C.  Liability of Chief Harvey, Chief Hansberry and Officer Schauren *in Their Individual Capacities***

The Amended Complaint fails to allege sufficient facts from which to infer that the named supervisors – Lebanon City Police Chief William Harvey, Lancaster County Probation Supervisor Joseph Schauren and Lancaster County Probation Chief James Hansberry – were aware of, but indifferent to, the risk of erroneous issuance and/or execution of arrest warrants. The claims asserted against these individuals in their individual capacities will be dismissed with

leave to amend.

Under §1983, supervisory liability cannot be predicated solely upon the operation of principles of *respondeat superior*.  Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985).  In the Third Circuit, supervisory liability under §1983 may be imposed where the supervisor was personally involved in the alleged constitutional violation, or where the supervisor was deliberately indifferent to the risk of a constitutional violation.  A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3d Cir. 2004).[11]

Here, only the latter theory is applicable because the Amended Complaint does not allege that any of the named supervisors were personally involved in issuing or executing the arrest warrant.  Indeed, there is no allegation that Chief Williams, Officer Schauren or Chief Hansberry even were aware that the warrant was issued, much less aware that it was issued in error.

To establish a supervisory liability claim based on "deliberate indifference," the plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from

---

[11] In Stoneking v. Bradford Area School District, 882 F.2d 720 (3d Cir.1989), the Court of Appeals held that, under City of Canton v. Harris, 489 U.S. 378, 387-88 (1989), a school official may be held liable in an individual capacity when the official, with deliberate indifference to the consequences, establishes or maintains a policy, practice, or custom that directly causes a deprivation of the constitutional rights of a student.  Id. at 725.  See also Sample v. Diecks, 885 F.2d 1099, 1117-1118 (3d Cir. 1989) ("Although the issue here is one of individual liability rather than of the liability of a political subdivision, we are confident that, absent official immunity, the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve.") (footnote omitted).

the supervisor's failure to employ that supervisory practice or
procedure.

Brown v. Muhlenberg Tp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d
1099, 1118 (3d Cir.1989)).  "[I]t is not enough for a plaintiff to argue that the constitutionally
cognizable injury would not have occurred if the superior had done more than he or she did."
Sample, 885 F.2d at 1118.  Rather, the plaintiff must "identify specific acts or omissions of the
supervisor that evince deliberate indifference and persuade the court that there is a relationship
between the 'identified deficiency' and the 'ultimate injury.'" Brown, 269 F.3d at 216 (quoting
Sample, 885 F.2d at 1118).

     Here, Ms. Martinez has not identified any conduct or policies on the part of, or created
by, the supervisors.  She has not connected any such conduct to her arrest.  Even construing the
Amended Complaint in the light most favorable to Ms. Martinez, it cannot be inferred that the
police chief and probation chief failed to implement proper safeguards against the issuance and
execution of mistaken warrants.  Ms. Martinez alleges only that these supervisor defendants were
the decisionmakers for their respective municipal units and were responsible for hiring, training
and supervising their subordinates.[12]  With respect to Officer Schauren, Ms. Martinez alleges
only that he was Probation Officer Warner's supervisor.  (Id. at ¶ 8.)  As discussed above,
nothing in the Amended Complaint inferentially links Officer Warner – or, by extension, his
supervisor – to the issuance of the arrest warrant.

     The Court recognizes that prior to discovery, it is difficult for Ms. Martinez to identify the

---

[12] Ms. Martinez identifies Chief Hansberry as one of the decisionmakers with respect to
the customs and policies of the Lancaster County Adult Probation and Parole Department (Amd.
Compl. ¶¶ 9, 10, 17), and Chief Williams as the decisonmaker responsible for customs, practices
and training in the Lebanon City Police Department (id. at ¶ 16).

"specific supervisory practice or procedure" that the named supervisors failed to employ.  As the Court of Appeals noted in <u>Sample</u>, "[n]ormally, an unreasonable risk in a supervisory liability case will be shown by evidence that such harm has in fact occurred on numerous occasions. Similarly, deliberate indifference to a known risk will ordinarily be demonstrated by evidence that the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries."  <u>Sample</u>, 885 F.2d at 1118.  Few plaintiffs will have access to this type of information prior to discovery.

However, even at this early stage of the proceedings, Ms. Martinez must do more than recite conclusory allegations.  The only allegation in this Amended Complaint that even *suggests* liability is the plain fact of the mistakenly issued warrant.  This alone is not enough to infer that Chief Harvey, Chief Hansberry and Officer Schauren failed to implement proper safeguards to prevent the issuance and execution of erroneous arrest warrants.  <u>See</u> <u>Sample</u>, 885 F.2d at 1118 ("[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did.").  Accordingly, the claims asserted against Chief Harvey, Chief Hansberry and Officer Schauren will be dismissed with leave to amend.

## D.      Liability of the City of Lebanon and Lancaster County

The threshold requirement for municipal or supervisory liability is an underlying constitutional violation by an employee.  <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986).  The municipal defendants here contend that there was no cognizable constitutional violation by either Officer Rissinger, Sergeant Bord or Officer Warner, and, therefore, there is no basis for municipal liability.  Assuming, however, that a constitutional violation did occur, the

allegations in the Amended Complaint suffice to state a claim against the governmental entities.

As with supervisor liability, Lancaster County and the City of Lebanon cannot be held liable for the unconstitutional acts of their employees under a theory of *respondeat superior*. Berg, 319 F.3d at 275.  Pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), however, a municipality can be liable for damages under §1983 when a policy, practice or custom of the municipality causes a constitutional violation.  Id. at 691.

In order to recover from a municipality under §1983, a plaintiff must "(1) identify a policy or custom that deprived him or her of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury."  Startzell v. City of Philadelphia, No. 05-5287, 2007 WL 172400, at *15 (E.D. Pa. Jan. 18, 2007) (citing Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). Alternatively, a plaintiff may recover under §1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton, 489 U.S. at 387-88; Muhlenberg Twp., 269 F.3d at 215.

A plaintiff need only demonstrate a likelihood of resultant constitutional violations, not necessarily a long-standing practice.  A single incident of unconstitutional conduct on the part of municipality is sufficient to establish municipal liability under Monell so long as the plaintiff can demonstrate the incident was caused by an existing, unconstitutional municipal policy.  Tuttle, 471 U.S. at 823-24; see also Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (holding that "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly").

Applying these standards here, the Court concludes that Ms. Martinez has adequately alleged a Monell claim against Lancaster County and the City of Lebanon.  As a matter of law, a municipality may be held liable for a failure to provide sufficient safeguards against errors such as the mistake that resulted in Ms. Martinez's arrest.  Berg, 319 F.3d at 276.  Though decidedly sparse, the allegations in this Amended Complaint are minimally sufficient to give Lancaster County and the City of Lebanon "fair notice" of what the claims are and the grounds upon which they rest.  See Twombly, 127 S. Ct. at 1964-65.[13]

The Amended Complaint alleges that both Lancaster County Probation and Lebanon County Probation employees made mistakes or failed to recognize that a mistake had been made, cumulatively resulting in Ms. Martinez's arrest.  With respect to Lancaster County, Ms. Martinez alleges that the arrest warrant was issued from Lancaster County (Amd. Compl. ¶ 51), and that Ms. Martinez was arrested for failing to report to her *Lancaster* County Probation officer (id. at ¶ 78), even though Ms. Martinez allegedly was reporting properly to a *Lebanon* County Probation officer and had not violated her probation.[14]  Lancaster County allegedly "owns, operates,

---

[13] More detailed information concerning the municipalities' internal warrant policies and procedures is in their possession and control.  Prior to discovery, it would be difficult, if not impossible, for Ms. Martinez to know whether or how these municipalities safeguard against such mistakes, or even the precise nature of the mistake or error that resulted in her arrest.  See Alston, 363 F.3d at 233 ("The need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages."); Colburn, 838 F.2d at 666 (noting that "in civil rights cases most of the evidence can be developed only through discovery of materials held by defendant officials").

[14] Although the allegations in the Amended Complaint are not sufficient to state a claim against Lancaster County Probation Officer Warner, they do state a constitutional violation stemming from the conduct of Lancaster County and Lebanon County Probation employees.  Thus, even if the claims against Officer Warner are dismissed, the requirement of an "underlying constitutional violation" is met with respect to the Lancaster County Defendants.

manages, directs and controls the Lancaster County Adult Probation and Parole Department," and "sets and implements the local policies and customs" that govern that department.  (Id. at ¶ 17.)

More specifically, Ms. Martinez alleges that Lancaster County "had a practice and policy that allowed probationers to be falsely arrested in violation of probationers' civil rights."  (Id. at ¶ 116.)  This practice and policy allegedly "involved a failure of inter-county communication regarding supervision of probationers who move from one county to another."  (Id. at ¶ 117.)  These allegations are bolstered by Officer Dishong's letter, attached as an exhibit to the Amended Complaint.  (Id. at Ex. A.)  Officer Dishong's letter states that "Ms. Martinez did not violate her probation nor did she receive any new charges."  (Id.)  In sum, these allegations suffice to permit the case against Lancaster County to proceed into discovery.

With respect to the City of Lebanon, Ms. Martinez alleges that its police officers executed the erroneous warrant and arrested her without taking proper precautions.  (Id. at ¶ 110.)  The City of Lebanon allegedly operates and controls its Police Department, and through that department, "sets and implements the local policies and customs that govern the Lebanon City Police Department and its police officers."  (Id. at ¶ 23.)  Ms. Martinez points to "a practice and policy that failed to adequately protect the constitutional rights of persons subject to arrest warrants that were not based on probable cause," resulting in her arrest.  (Id. at ¶¶ 118-119.)  She also alleges that this practice and policy demonstrates "deliberate indifference" on the part of the City of Lebanon that caused the violation of her constitutional rights.  (Id. at ¶ 128.)  Again, prior to discovery, Ms. Martinez cannot know precisely what information the City of Lebanon Police Department received, and whether the Department had in place proper precautions to safeguard

24

against the execution of mistakenly issued warrants.  The allegations in the Amended Complaint

suffice to state a claim against the City of Lebanon.

### III.  Fourth Amendment Search – *The Strip Search*

Ms. Martinez alleges that upon her arrival at Lancaster County Prison, Correction

Officers Jane Doe #1 and #2 conducted a strip search of her person.  (Amd. Compl. ¶¶ 69, 112.)

Prior to her arrival at Lancaster County Prison, Ms. Martinez had been in custody at the Lebanon

County Prison, and prior to that, she was in the custody of the City of Lebanon Police

Department.  (Id. at ¶¶ 60-68.)  Ms. Martinez alleges that the strip search occurred not because

the corrections officers had any particularized suspicion with respect to Ms. Martinez, but

pursuant to an unlawful blanket strip search policy.  (Id. at ¶¶ 112, 120.)

### A.  Liability of Lancaster County Corrections Officers Jane Doe #1 and #2

These unidentified officers have been dismissed by stipulation.  (Docket No. 28.)

Nevertheless, the sufficiency of the allegations against them are relevant to determining

supervisory and municipal liability where the threshold question is whether there was an

underlying constitutional violation.  Here, it is alleged that a strip search took place; the question

is whether it violated the Fourth Amendment.

In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court addressed whether a blanket

policy of conducting a strip search of prisoners (pre-trial detainees in Bell) following every

contact visit violated the Fourth Amendment's prohibition on unreasonable searches.  While

noting that prisoners retain some constitutional rights, the Supreme Court emphasized that

"maintaining institutional security and preserving internal order and discipline are essential goals

that may require limitation or retraction of the retained constitutional rights of both convicted

25

prisoners and pretrial detainees." Id. at 545-46.  Accordingly, courts should allow prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547 (citations omitted).

        In Bell, pretrial detainees were "required to expose their body cavities for a visual inspection as a part of a strip search conducted after every *contact visit with a person from outside the institution.*" Id. at 558 (emphasis added).  Assuming without deciding that both convicted prisoners and pretrial detainees retain some Fourth Amendment rights, the Court held that a blanket policy of conducting strip searches without any particularized suspicion was reasonable where, as in Bell, inmates were in contact with persons from outside the prison.  Id. Under such circumstances, the risk of smuggled contraband or weapons justified visual body cavity searches conducted "on less than probable cause."  Id.

        However, the Supreme Court carefully noted that it did not underestimate "the degree to which these searches may invade the personal privacy of inmates" Id. at 560.[15]  Any evaluation of a strip search policy requires "a balancing of the need for the particular search against the invasion of personal rights that the search entails."  Id. at 559.  Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," courts must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Id. at 559.

_____

        [15] Without a doubt, "[t]he feelings of humiliation and degradation associated with being forced to expose one's nude body to strangers for visual inspection is beyond dispute."  Newkirk v. Sheers 834 F. Supp. 772, 788 (E.D. Pa. 1993) (citing Mary Beth G. v. Chicago, 723 F.2d 1263, 1272 (7th Cir. 1983)).

Interpreting this rule, federal courts of appeals[16] and trial courts in the Third Circuit have invalidated strip search policies as applied to nonviolent or misdemeanor offenders.  See, e.g., Fuller v. M.G. Jewelry, 950 F.2d 1437 (9th Cir. 1991) (strip search unconstitutional after arrest for grand theft); Mary Beth G., 723 F.2d at 1272 (strip search unconstitutional after arrest for traffic offenses and other nonviolent misdemeanors); Newkirk v. Sheers, 834 F. Supp. 772 (E.D. Pa. 1993) (blanket strip and body cavity searches of pretrial detainees violated their Fourth Amendment rights); Ernst v. Ft. Lee, 739 F. Supp. 220 (D.N.J. 1990) (strip search policy unconstitutional on traffic offender absent evidence of reasonable suspicion that arrestee was in possession of a dangerous weapon, controlled substances or evidence of a crime); O'Brien v. Woodbury Heights, 679 F. Supp. 429 (D.N.J. 1988) (strip search unconstitutional after arrest for disorderly conduct); Davis v. City of Camden, 657 F. Supp. 396 (D.N.J. 1987) (strip search was unjustified pursuant to blanket policy encompassing all arrestees and in absence of actual suspicion that arrestee was concealing weapons or contraband).[17]

Courts have frequently held that in order to strip search detainees, the arresting officers must have a *reasonable individualized suspicion* that a detainee is carrying or concealing contraband.  "Individualized suspicion sufficient to warrant a strip search of such detainees may be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and any prior arrest record."  Newkirk, 834 F. Supp. at 788.

Here, is it not clear whether Ms. Martinez was even charged with any offense prior to the

---

[16] The Court of Appeals for the Third Circuit has not addressed this issue.

[17] See also Masters v. Crouch, 872 F.2d 1248 (6th Cir. 1989); Walsh v. Franco, 849 F.2d 66 (2d Cir. 1988); Jones v. Edwards, 770 F.2d 739 (8th Cir. 1985); Hill v. Bogans, 735 F.2d 391 (10th Cir. 1984); Logan v. Shealy, 660 F.2d 1007 (4th Cir. 1981).

strip search, but presumably, if she was charged, it was with violation of the conditions of her

probation for supposedly failing to report to her probation officer.  This is not violent conduct.  In

addition, at the time Ms. Martinez arrived at Lancaster County Prison, she allegedly had been in

police custody for approximately 24 hours without any contact with persons from outside the

detention facilities.  (Amd. Compl. ¶¶ 60, 64, 65, 68, 69.)  She was transported by law

enforcement authorities between various facilities, but it is dubious that those circumstances

would raise an individualized suspicion that she possessed contraband.  Prior to discovery, the

reasons for her strip search – whether based upon an individualized suspicion or simply a blanket

policy – are unknown.  At this early stage, the Court will not say as a matter of law that the strip

search was reasonable or unreasonable within the meaning of the Fourth Amendment.[18]  The

allegations in the Amended Complaint suffice to state a potential constitutional violation in

connection with the alleged strip search.

**B.     Liability of Lancaster County Prison Warden Vincent Guarini**

As previously discussed, supervisory liability may be imposed under §1983 where the

plaintiff has alleged that the supervisor was deliberately indifferent to the risk of a constitutional

violation.  To establish such a claim against Warden Guarini, Ms. Martinez must identify the

---

[18] The Lancaster County Defendants assert that Pennsylvania law permits strip searches by an agent.  See 61 P.S. § 331.27b(d)(1).  This law may be relevant to a qualified immunity defense, which was not raised at this stage, but it is not relevant to the question of whether under the circumstances presented here, the strip search violated the Fourth Amendment.  In other words, the issue in this lawsuit is whether the Pennsylvania law, and any corresponding Lancaster County Prison policy, violated the Fourth Amendment as applied to Ms. Martinez.  Bell requires every strip search to be reasonable within the meaning of the Fourth Amendment, and this determination requires a balancing of the prisoner's privacy interests with the government's security interest *under the particular circumstances in each and every case.*  Bell, 441 U.S. at 559.

specific supervisory practice that Warden Guarini failed to employ, and show that without this practice, the existing procedure created an unreasonable risk of a Fourth Amendment violation. Brown, 269 F.3d at 216.  Ms. Martinez must also establish that Warden Guarini was aware that this risk existed, but was indifferent to it, and that the violation resulted from the failure to employ the identified supervisory practice or procedure.  Id.

Here, the policy in question is the alleged practice of conducting strip searches of all inmates, regardless of whether there is any basis for an individualized suspicion.  (Id. at ¶ 120.) Ms. Martinez alleges that Warden Guarini, through the implementation of this policy, demonstrated deliberate indifference to the risk of Fourth Amendment violations, and that this indifference was a cause of the alleged violation in this case.[19]  (Id. at ¶ 127.)

The allegations are straightforward.  As a result of either a failure to train or a blanket policy, Lancaster County Prison corrections officers allegedly strip searched Ms. Martinez absent any particularized suspicion.  Warden Guarini allegedly was "responsible for hiring, retaining, supervising and training corrections officers in the Lancaster County Prison" and "established customs and policies" for the Prison.  (Id. at ¶¶ 19, 123.)  Though certainly lacking in specifics,

---

[19] To the extent Ms. Martinez asserts that Warden Guarini and the Lancaster County Prison Board are liable for her allegedly unlawful *arrest* (see Amd. Compl. ¶¶ 121-123), these claims must be dismissed.  The Third Circuit Court of Appeals, while leaving open the possibility that *arresting officers* and those involved in issuing an erroneous arrest warrant may be liable for an arrest without probable cause, it has drawn the line at holding prison personnel liable for not investigating prisoners' claims of innocence.  See Berg, 319 F.3d at 271 n.6 (distinguishing Baker v. McCollan, 443 U.S. 137 (1979)).  Thus, while Warden Guarini and the Prison Board may be liable with respect to the strip search, they are not liable with respect to any Fourth Amendment violation arising from Ms. Martinez's arrest.  It is not the job of prison personnel to investigate detainees' protestations of innocence.  See Baker, 443 U.S. at 146 ("Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.  The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.").

these allegations are minimally sufficient to put Warden Guarini on notice of the claims against him in his individual capacity as a policymaker for the prison.

**C.      Liability of Lancaster County and Lancaster County Prison Board**

Ms. Martinez alleges that Lancaster County, "acting through its Prison Board, was responsible for the policies, practices, customs, supervision, implementation and conduct of all matters pertaining to the Lancaster County Prison and was responsible for the appointment, training, supervision and conduct of all Prison Board personnel, including those working in the Lancaster County Prison."  (Id. at ¶ 18.)  Lancaster County and the Lancaster County Prison Board allegedly "had a practice and policy that automatically, and without individualized suspicion, provided for the strip search of all prisoners upon their arrival in violation of the prisoners' civil rights."  (Id. at ¶ 120.)  Ms. Martinez alleges that Lancaster County and the Prison Board, through the implementation of this policy, demonstrated deliberate indifference to the risk of Fourth Amendment violations, and that this indifference caused the alleged violation in this case.  (Id. at ¶ 127.)

As previously discussed, under Monell, a municipality is liable for damages under §1983 when a policy, practice or custom of the municipality causes a constitutional violation, Monell, 436 U.S. at 691, or where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," City of Canton, 489 U.S. at 387-88; Muhlenberg Twp., 269 F.3d at 215.

Here, the allegations in the Amended Complaint, though sparse, suffice to state Monell claims against Lancaster County and the Lancaster County Prison Board.  Ms. Martinez explicitly alleges that the strip search was the result of either a blanket policy or a failure to

properly train corrections officers with regard to the legality of strip searches under various circumstances. Once again, prior to discovery, it would be difficult for Ms. Martinez to be more specific in her allegations on these claims, so she will be permitted to proceed with them.

**IV.    Fourteenth Amendment Deliberate Indifference**

Ms. Martinez also asserts a Fourteenth Amendment "deliberate indifference" claim against Lancaster County probation officer Nevin Warner.

Claimants generally should not resort to Fourteenth Amendment due process principles if the Fourth Amendment is implicated. Graham v. Connor, 490 U.S. 386, 394-95 (1989). Where, however, the consequences of the officer's conduct were unintentional, the Fourteenth Amendment may apply. County of Sacramento v. Lewis, 523 U.S. 833, 844-46 (1998); Berg, 219 F.3d at 274. Thus, where a defendant does not intentionally cause the plaintiff to be seized, but is nonetheless responsible for the seizure, a due process "deliberate indifference," rather than a Fourth Amendment, analysis may be appropriate. Berg, 319 F.3d at 274 (citing Lewis, 523 U.S. at 843-44). An executive abuse of power violates the Fourteenth Amendment where the state actor is sufficiently reckless or deliberately indifferent to the plaintiff's rights as to "shock the conscience." Lewis, 523 U.S. at 846.

As a general matter, negligence by public officials is not actionable as a due process violation. Berg, 219 F.3d at 274; see also Davidson v. Cannon, 474 U.S. 344 (1986). "[C]onduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849 (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)). However, "the point of the conscience shocking" may be reached "when injuries are produced with culpability falling within

the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or 'gross negligence.'" Id. (citing Daniels, 474 U.S. at 334 n.3). While "generally defined to require only knowledge of a serious risk of harm, the term "deliberate indifference" also implies a failure to take reasonably available measures to reduce or eliminate that risk." Berg, 219 F.3d at 274 (internal citations omitted).

As previously discussed with respect to the Fourth Amendment claim against Officer Warner, there is little indication in the Amended Complaint as to how Officer Warner was involved in the events that led to Ms. Martinez's arrest.  Theoretically, it is possible that Officer Warner, unlike a police officer making split-second decisions, had both sufficient time and reasonable measures at his disposal to prevent any mistake with respect to the issuance of the arrest warrant.  Even drawing all inferences in favor of Ms. Martinez, however, any Fourteenth Amendment "deliberate indifference" claim against Officer Warner is at this time wholly speculative.  Accordingly, this claim will be dismissed with leave to amend.

**V.     State Law Claims**

Ms. Martinez generally avers that the "acts and conduct" of Officer Warner, Officer Dishong, Sergeant Bord, Officer Rissinger, Officer Doe #1 and Office Doe #2[20] "constitute assault and battery, false imprisonment, and intentional infliction of emotional distress" under state law.  (Amd. Compl. ¶ 132.)  It is not clear which claims are asserted against which defendants.

Assuming that Ms. Martinez intends to assert each claim against each defendant, the

---

[20] The claims against Officer Dishong are not the subject of any motion to dismiss, and the claims against the unidentified corrections officers have been dismissed by stipulation (Docket No. 28).

Amended Complaint suffices to state claims for false imprisonment, assault and battery against the arresting police officers, Officer Rissinger and Sergeant Bord.[21]  The intentional infliction of emotional distress claim, however, will be dismissed because there are no allegations of any extreme or outrageous conduct on the part of Officer Rissinger and Sergeant Bord.[22]

The state law claims against Officer Warner will be dismissed with leave to amend.  The Court has already discussed at length the paucity of allegations in the Amended Complaint that detail Officer Warner's alleged role in the issuance of the arrest warrant.  Just as the allegations are insufficient to state federal constitutional claims against Officer Warner, they also are insufficient with respect to the asserted state law claims.

**CONCLUSION**

For the foregoing reasons, both motions will be granted in part and denied in part.

The Motion of the Lebanon City Defendants will be denied with respect to all claims asserted against the City of Lebanon, Sergeant Bord and Officer Rissinger, with the exception of the intentional infliction of emotional distress claim; that claim will be dismissed with leave to amend.  The Motion will be granted with respect to all claims asserted against Chief Harvey in his individual capacity; those claims also will be dismissed with leave to amend.

---

[21] The Lebanon City Defendants assert that any state law claims against the City of Lebanon and Police Chief Harvey – but not the claims against Officer Rissinger and Sergeant Bord – are barred under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §§ 8541-64.  Ms. Martinez, however, has not asserted any state law claims against the City of Lebanon and Chief Harvey.

[22] Pennsylvania allows recovery for intentional infliction of emotional distress in rare circumstances involving "extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another."  Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998) (quoting Restatement (Second) of Torts § 46 (1965)).

The Motion of the Lancaster County Defendants will be denied with respect to all claims except those claims asserted against Chief Hansberry, Officer Schauren and Officer Warner in their individual capacities; those claims will be dismissed with leave to amend.

Finally, the Motion is moot as to all claims asserted against the individual defendants in their *official* capacities and all claims against Lancaster County Defendants Roth, Doe #1 and Doe #2 in both their *official and individual* capacities. Pursuant to stipulations by the parties, these claims have been dismissed.

An order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELODY M. MARTINEZ, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| NEVIN WARNER, ET AL., | : | |
|     Defendants | : | NO. 07-3213 |

## ORDER

AND NOW, this 5th day of June, 2008, upon consideration of the Motion to Dismiss of the Lebanon City Defendants (Docket No. 18) and the Plaintiff's response thereto (Docket No. 23); and the Motion to Dismiss of the Lancaster County Defendants (Docket No. 19), the Plaintiff's response thereto (Docket No. 24), and the Lancaster County Defendants' reply (Docket No. 25), it is hereby ORDERED that both motions are GRANTED IN PART AND DENIED IN PART as follows:

1.  The Motion of the Lebanon City Defendants is DENIED with respect to all claims against the City of Lebanon and Officer Rissinger and Sergeant Bord in their individual capacities, with the exception of the intentional infliction of emotional distress claim, which is dismissed.

2.  The Motion of the Lebanon City Defendants is GRANTED with respect to all claims against Chief Harvey in his individual capacity; those claims are dismissed with leave to amend.

3.  The Motion of the Lancaster County Defendants is DENIED with respect to all claims except those claims asserted against Chief Hansberry, Officer Schauren and Officer Warner in their individual capacities; those claims are dismissed with

leave to amend.

4.      Both motions are MOOT as to all claims asserted against the individual

defendants in their *official* capacities and all claims against Lancaster County

Defendants Roth, Doe #1 and Doe #2 in both their *official and individual*

capacities.  Those claims are dismissed pursuant to the parties' stipulations.

IT IS FURTHER ORDERED that Plaintiff may amend the Amended Complaint

consistent with this Order and the accompanying Memorandum within 30 days of the date of this

Order.


                                      BY THE COURT:



                                      S/Gene E.K. Pratter
                                      GENE E.K. PRATTER
                                      United States District Judge